**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 10-54 JSW |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL** |
| v. | |
| GINGER LURA TINA DANIELS, | |
| Defendant. | |

Now before the Court for consideration is Defendant's Motion for New Trial. (Docket No. 139.) The Court has considered the parties' positions, relevant legal authority, and the record in this case, and it finds the matter suitable for disposition without oral argument. The Court VACATES the hearing scheduled for September 8, 2011, and the Court HEREBY DENIES Defendant's motion.

**BACKGROUND**

On May 10, 2011, a jury convicted Defendant Ginger Daniels ("Ms. Daniels") of one count of conspiracy to commit mail or bank fraud, one count of mail fraud, and three counts of bank fraud. (Docket No. 124.) These charges were based on allegations that Ms. Daniels conspired with Rocky Garza, and others, to prepare and submit fraudulent financial documents, such as pay stubs and W-2 statements, to mortgage lenders, including Wells Fargo Bank, WMC Mortgage and Countrywide Savings Bank. Ms. Daniels defended against the charges by arguing that the false documents were not material to the lenders.

Ms. Daniels' defense was premised on a theory that each of the lenders intended to sell or otherwise securitize the loans at issue and, as a result, would not bear the risk of loss. In brief, Ms. Daniels argued that the allegedly false information did not influence the lenders to part with money or property, because the lenders "were going to make the loans at issue in this case no matter what[.]" (Docket No. 138, May 9, 2011 Trial Transcript ("5/9/11 RT") at 134:10-11.)

Ms. Daniels now moves for a new trial on the basis that: (1) the Court erred in denying a motion for mistrial after the Government belatedly produced documents relating to whether or not the loans at issue had been sold or securitized; (2) one of the alleged victims in this case may be the target of a federal criminal investigation, and the Government failed to disclose that information prior to trial; and (3) the Government improperly argued during rebuttal that evidence of the lenders' standards and practices was irrelevant to the jury's deliberations. Ms. Daniels argues that each of these three alleged errors prejudiced her and undermines the jury's verdict on the materiality element of the offenses.

The Court shall address specific additional facts as necessary in its analysis.

## ANALYSIS

**A.    Applicable Legal Standard.**

Pursuant to Rule 33, a "court may vacate any judgment and grant a new trial if the interests of justice so requires." Fed. R. Crim. P. 33(a). "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for a judgment of acquittal." *United States v. Inzunza*, 638 F.3d 1006, 1026 (9th Cir. 2011) (quoting *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992)). Thus, on a Rule 33 motion, a court need not view the evidence in the light most favorable to the government. Rather, a court is free to weigh the evidence and evaluate for itself the credibility of witnesses. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000); *Alston*, 974 F.2d at 1211. By the plain terms of Rule 33, however, this Court's focus must be whether failing to grant a new trial would result in manifest injustice.

**B.     The Court Denies Ms. Daniels' Motion**.

   **1.     The Mistrial Issue.**

On May 6, 2011, Ms. Daniels moved for a mistrial when, during trial, the Government produced documents relating to whether or not the loans at issue in this case had been sold or securitized. (*See* Docket No. 113.) The Court denied Ms. Daniels' motion and it denied her request for a one month continuance. Rather, it permitted Ms. Daniels to introduce the documents, over any possible objection the Government might make. The Court also determined that Ms. Daniels' designated expert should be permitted to opine on the issue of securitization or the sale of loans, and would not allow the Government to rebut such testimony. The Court also offered Ms. Daniels' a brief continuance if her expert required additional time to revise his opinions in light of the production, but she declined that offer. (*See* 5/9/11 RT at 4:14-6:21, 14:5-22, 19:10:-20;4, 28:5-24.)

Ms. Daniels' first argument in support of her motion for new trial, is that the Court's remedy was inadequate. Ms. Daniels reiterates each of the arguments she raised with the Court in connection with her motion for mistrial and again restates her view that the belated disclosure caused her prejudice because she did not have a meaningful opportunity to fully develop her theory of defense: that the income information was not material to the lenders because, in accordance with their general practices, they intended to - and did - sell or securitize the loans at issue.

The Government devotes a large part of its argument in opposition to Ms. Daniels' motion restating its position that it did not realize the "relevance" of the evidence until May 5, 2011. As the Court noted in its ruling on Defendant's motion for a mistrial, relevance is not the appropriate standard. (5/9/11 RT at 5:20-6:1.) Rather, under Federal Rule of Criminal Procedure 16, the issue is whether the evidence in question is material to the preparation of the defense. Similarly, under *Brady*, the question is whether "the evidence is material either to guilt or innocence." *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).

The Court concluded that under these standards, the Government should have disclosed the material to Ms. Daniels earlier. Indeed, to say that the Court was less than pleased that the Government did not disclose the information earlier would be an understatement. The Court, however, also found that the Government had not acted in bad faith, and that while the documents qualified as *Brady* material, the Court clarified that it had not found a *Brady* violation. (*See, e.g.,* 5/9/11 RT at 14:10-15:19, 18:1-4.) The Court has carefully reconsidered Ms. Daniels' arguments in light of the evidence produced at trial, which included a number of emails between Ms. Daniels and Rocky Garza that demonstrated she was aware that the income information she was provided was capable of influencing the lenders in this case to issue the loans. Based on the record before it, the Court concludes that Ms. Daniels has failed to demonstrate that there is a reasonable probability the outcome would have been different had the documents been disclosed earlier. Moreover, the Court is not convinced that a miscarriage of justice would result if it failed to deny her a new trial. Accordingly, the Court denies Ms. Daniels' motion on this basis.

### 2. The Alleged Investigation.

Ms. Daniels second argument in support of her motion is that the Government failed to disclose information pertaining to a possible investigation of WMC Mortgage. On August 30, 2011, the Court ordered the Government to submit an *in camera* under seal report on this issue. The Court has considered the Government's submission, and it concludes that nothing in that submission suggests that a miscarriage of justice would result if the Court failed to grant Ms. Daniels a new trial. Accordingly, the Court denies Ms. Daniels' motion on this basis.

### 3. Closing Argument.

Ms. Daniels' final argument in support of her motion is that, during rebuttal, the Government improperly argued to the jury that they could not consider evidence of lending practices for any reason. The Ninth Circuit has stated that a "'prosecutor should not misstate the law in closing argument.'" *United States v. Moreland*, 622 F.3d 1147, 1162 (9th Cir. 2010) (quoting *United States v. Berry,* 627 F.2d 193, 200 (9th Cir. 1980)). However, "[i]mproprieties in counsel's arguments to the jury do not constitute reversible error unless they are so gross as

probably to prejudice the defendant." *United States v. Guess*, 745 F.2d 1286, 1288 (9th Cir. 1984) (internal quotations, citations and brackets omitted).

Before trial, the parties vigorously disputed the relevance of lender underwriting practices to the issue of materiality. (*See, e.g.,* Docket Nos. 43-44, 53, 55.) The parties ultimately agreed upon the following jury instruction:

> The government alleges that the defendant, together with others, engaged in a scheme to defraud lenders by submitting, and causing to be submitted, false and fraudulent information on mortgage loan applications and supporting documentation, such as inflated income and false employment information, which materially misstated or omitted material facts.
>
> If you find that a fraudulent scheme or artifice existed, you may find the defendant guilty even if you believe the lenders might have discovered the fraud had they probed further or been more careful. If you find that these false representations or omissions were made and that they had a natural tendency to influence, or were capable of influencing a lender's decision to fund the requested mortgage loans, it is irrelevant whether you believe that the lenders in this case were careless, gullible or even negligent. In addition, it also is irrelevant whether or not the lenders in this case relied on the materially false and misleading statements and omissions of the scheme, or whether the lenders suffered any harm as a result of the scheme.
>
> You may, however, consider evidence of lenders' underwriting practices and standards in determining whether the alleged misstatements or omissions were material. If you find that the alleged misstatements or omissions were not material, then you must return a verdict of not guilty, even if you believe that the defendant is responsible for the misstatements or omissions at issue.

(*See* Docket No. 73 (Stipulation), 126 (Final Jury Instructions, p. 24) (hereinafter "Lending Practices Instruction").)

During closing argument, Ms. Daniels argued that each of the loan files at issues contained various "red flags." (*See, e.g.,* 5/9/11 RT at 134:16-139:3 (regarding WMC Mortgage loan to Dorothy Marshall), 141:14-147:5 (regarding Countrywide loans to Quencey Williams and Miguel Rodriguez).) She then argued that, because of these red flags, the jury could and should question whether the income information Ms. Daniels submitted to the lenders was capable of influencing them to issue the loans. (*See id.* at 138:24-139:3, 158:10-12; *see also id.* at 147:7-19 ("When a lender is on notice that there are huge problems with a loan file, when the red flags are apparent, when the red flags actually are responsive to conditions that the

5

lender itself has imposed, and when they ignore those conditions, that is evidence that they are intent on making this loan no matter what those documents say. ... [Y]ou can and should infer that information about income was no more important to them than the other information that they so readily ignored.").) Ms. Daniels also argued Countrywide and WMC Mortgage used a lending model which demonstrated that they planned to sell or securitize the loans so that they bore no risk of loss. According to Ms. Daniels, that fact explained why these institutions would make the loans in spite of all the red flags and why the income information was not, in fact, material. (*Id.* at 148:3-150:1, 150:6-13.)

On rebuttal, the Government responded to this argument and argued that "everything you heard about, red flags to the lenders; they should have caught this; if they would have caught this then this, then that, *none of that can in any way be a part of your deliberations.*" (RT at 161:7-10 (emphasis added).) Ms. Daniels objected to this argument. The Government then paraphrased a portion of the Lending Practices Instruction, and argued that the jury could find Ms. Daniels guilty "even if you believe the lenders might have discovered the fraud had they probed further or been more careful. If you find that these false representations and omissions were made and that they had a natural tendency to influence or were capable of influencing a lender's decision to fund the requested mortgage loan, it is irrelevant. It is irrelevant whether you believe that the lenders in this case were careless, gullible or even negligent." (*Id.* at 162:5-15.) The Government then argued to the jury that "everything that you heard when [Ms. Daniels] went through each of those loans and pointed out ... red flags are *irrelevant to your deliberations*." (*Id.* at 162:16-18 (emphasis added); *see also* 164:6-10.)

The Government's argument that the "red flags" were entirely irrelevant was, in fact, contrary to the Lending Practices Instruction, which instructed the jury that they "could consider evidence of lenders' underwriting practices and standards in determining whether the alleged misstatements or omissions were material." (Lending Practices Instruction.) However, looking at the Government's argument as a whole, the Court cannot conclude these misstatements prejudiced Ms. Daniels. In the first portion of its closing argument, the Government did not suggest that the jury could not consider such evidence in determining

6

whether the information submitted by Ms. Daniels was material. Rather "it spent a substantial amount of time reviewing the legal elements of the charges and discussing which facts the jury needed to find" to render a guilty verdict. *Moreland*, 622 F.3d at 1163 (concluding that single brief alleged misstatement of law in closing was not improper and did not affect defendant's substantial rights). In addition, although the Government's rebuttal argument was not lengthy, it only made these statements twice.

Ms. Daniels argues that the Government's error was compounded by the fact that the Court overruled her request to read the Jury Practices Instruction in its entirety after the rebuttal argument. However, it is this Court's practice to provide each juror with a written copy of the final instructions at the time the Court instructs them and for use during deliberations. Thus, the jurors had a full and complete copy of the Lending Practices Instruction to consult with during and after closing argument. Finally, the Court jury instructed that closing arguments are not evidence, and jurors are presumed to follow instructions. *See*, *e.g., Francis v. Franklin*, 471 U.S. 307, 324 n.9 ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, and make sense of, and follow the instructions given them.").

Accordingly, the Court denies Ms. Daniels' motion for a new trial on this basis.

## CONCLUSION

The Court also has considered whether the cumulative effect of these purported errors warrants a new trial, and the Court concludes they do not. Accordingly, the motion is denied on this basis as well. For each of the reasons set forth above, the Court DENIES Ms. Daniels' motion for a new trial. The parties shall appear as scheduled on October 13, 2011 at 2:00 p.m. for sentencing.

**IT IS SO ORDERED.**

Dated: September 7, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE